CHARLES A. COLLINS, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 299–66.   Filed April 20, 1967.

*Charles A. McGeary*, for the petitioner.
*Albert Squire*, for the respondent.

OPINION

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioner's income tax for 1962 in the amount of $32,897.16. The only issue for adjudication is whether the petitioner is entitled to report long-term capital gain on the sale of real estate on the installment method.

All of the facts have been stipulated and are hereby found accordingly.

Charles A. Collins is an individual who resides at 365 Camden Avenue, Moorestown, N.J. He filed his income tax return for 1962 on a calendar year basis, using the cash receipts and disbursements method of accounting, with the district director of internal revenue in Camden, N.J.

On March 27, 1962, the petitioner entered into an agreement with N.L.I. Corp. of N.J. (hereinafter called N.L.I.) for the sale of 43 acres of land, more or less, for the price of $5,000 per acre, with the further stipulation that the exact acreage to be conveyed would be determined by a survey to be procured by the buyer at the buyer's expense. The agreement provided for the payment of $10,000 to the Title Insurance Corp. of Pennsylvania upon the execution of the agreement to be held in escrow until settlement; the payment of $40,000 in cash at the time of settlement; and the payment of the balance of the purchase price of approximately $165,000 within 3 years after the settlement date in the following manner:

As security for payment of said sum, the grantee of the subject tract shall execute and deliver to Seller, at the time and place of settlement, a purchase money mortgage and bond (or at Buyer's option, a note) in said amount, to be secured upon all of the subject tract, with the exception of eight and one third (8⅓) acres to be selected by Buyer, but containing not more than three hundred twenty five (325) feet of frontage on Route 70, which shall be free and clear of the lien of the said mortgage. The said purchase money mortgage [on payments] * * * shall provide for releases from the lien thereof at the rate of Six Thousand Dollars ($6,000.00) per acre, all such releases to be contiguous either to the aforementioned eight and one third (8⅓) acres (or to ground perviously

[sic] released, and to contain a proportionate amount of frontage on Route 70; shall be insured at the mortgagor's expense, as a first lien upon the mortgaged premises; shall provide that the lien thereof shall be limited to the mortgaged premises * * *

Under the terms for settlement and possession the agreement provided that:

Buyer agrees not to disturb growing crops until December 31, 1962, except for crops on that portion of the tract which is conveyed at settlement free and clear of the aforementioned purchase money mortgage.

The agreement also provided for extension of water mains, and sanitary sewers and, by survey maps, otherwise indicates that the properties in question were being acquired for real estate subdivision development.

Thereafter a professional survey was prepared and submitted under date of June 9, 1962.

On July 20, 1962, the parties to the agreement of March 27, 1962, entered into an amendment to that agreement, extending the date of settlement for a period of 60 days, and calling for an additional deposit to be made by the buyer. It also ratified all other terms and conditions of the original agreement.

As a result of the survey, the parties agreed to modify the agreement as follows: The area of land to be conveyed was enlarged from 43 acres, more or less, to 52.56 acres; the area of land to be excepted from the mortgage and sold for cash was enlarged from 8⅓ to 19.67 acres;[1] and the frontage on Route 70 of the land excepted from the mortgage was increased from a maximum of 325 feet to 330.03 feet.

Settlement under the agreement, as amended, was made on September 27, 1962, as of July 27, 1962. The sales price was $5,000 per acre, for 52.56 acres, or $262,800. The settlement papers disclose the following:

| | |
|---|---:|
| Consideration | $262, 800. 00 |
| Taxes of current year July 27 to December 31, 1962 as agreed | 296. 68 |
| Interest as agreed July 27 to September 27, 1962 | 1, 968. 23 |
| | $265, 064. 91 |
| Paid on account | 25, 000. 00 |
| Mortgage-principal PM | 144, 780. 00 |
| | 169, 780. 00 |
| Fund due seller | 95, 284. 91 |

[1] In a statement attached to the income tax return for 1962 the petitioner stated: "During interim, purchaser found he needed more ground and more 'free' ground."

## Settlement With Seller

| | | |
|---|---|---|
| Fund due seller in settlement | | $95,284.91 |
| U.S. revenue stamps | $289.30 | |
| Disbursement fee | 10.00 | |
| Twp. Cherry Hill—4th 1/2 1962 taxes | 285.61 | |
| Lahn real estate sales commission | 5,901.00 | 6,485.91 |
| Balance payable to seller | | 88,799.00 |

## Settlement With Purchaser

| | |
|---|---|
| Fund due seller | $95,284.91 |
| Title insurance O & M | 932.00 |
| Special insurance premium removal #2 & 6 | 10.00 |
| Recording deed and mortgage | 18.00 |
| Settlement fee | 10.00 |
| Total | 96,254.91 |
| Fund necessary to complete settlement | 96,254.91 |

A deed was delivered by petitioner to N.L.I. on September 27, 1962, and was recorded in the office of the Register of Deeds of Camden County, N.J., on September 28, 1962. The deed described land containing 52.56 acres, more or less.

A mortgage in the sum of $144,780, covering the 32.89-acre parcel, was delivered by N.L.I. to the petitioner on the same day, September 27, 1962, and was recorded in the office of the Register of Deeds of Camden County, N.J., on September 28, 1962. The mortgage called for three annual payments, beginning 1 year from date, with interest at 2½ percent on the unpaid balance for the first 2 years, and interest at 5 percent for the remaining term of the mortgage. The mortgage by its terms excepted the described tract containing 19.67 acres, more or less. It further provided:

The condition of this mortgage is such that upon the written request of the mortgagor, mortgagee hereby agrees to release parts of the mortgaged premises in acreage lots, upon the payment by the mortgagor to mortgagee of $6,000.00 per acre to be released, said payments to be applied against the principal of this mortgage. Mortgagor agrees that all requests for releases shall be for parcels or tracts contiguous to the 19.67 acres which are excepted from this mortgage as above set forth and a part of the lands and premises conveyed by Deed of even date with this mortgage, or to ground previously released and to contain a proportionate amount of frontage on Route 70.

The lien created by this mortgage shall be limited to the mortgaged premises and the mortgagor shall not be obligated to pay the mortgage indebtedness out of any assets other than the mortgaged premises.

The mortgagee agrees at the request of the mortgagor, and without charge, to join in the dedication of streets and utility easements to the appropriate public authorities and utility companies.

The petitioner received the first payment of principal under the mortgage, in accordance with its terms, in 1963.

On his income tax return for the year 1962, petitioner reported the sale of the acreage that was sold under the agreement of March 27, 1962, as amended, as follows: (1) 19.67 acres sold for $98,350, all cash; (2) 32.89 acres sold for $164,450, consisting of $19,670 cash, and a mortgage for $144,780. Petitioner reported the sale of the 32.89 acres as an installment sale.

In the notice of deficiency the respondent stated:

It is determined that you are not entitled to report on the installment method the long-term capital gain realized in 1962 on the sale of realty to N.L.I. Corporation since the cash payments received in 1962 exceed 30% of the selling price (Section 453(b)(2)). Accordingly, the entire gain on the sale is includible in your 1962 income, and your 1962 income attributable to such gain is increased as follows:

| | | |
|---|---:|---:|
| Sales price | | $262,800.00 |
| Basis | | 10,512.00 |
| Gross profit | | 252,288.00 |
| Less: Commissions | $13,140 | |
| Stamps | 289 | |
| Fees | 10 | 13,439.00 |
| Net profit | | 238,849.00 |
| Previously reported | | 107,260.35 |
| Net increase in capital gains | | 131,588.65 |
| Less: Sec. 1202 deduction (50%) | | 65,794.33 |
| Net increase in income | | 65,794.32 |

The petitioner contends that he and N.L.I. had a legal right to enter into their contract for the sale of the land in question under which he urges that he sold the land for $5,000 per acre, 19.67 acres for cash of $98,350 and 32.89 acres for $164,450, $19,670 cash and a mortgage for $144,780.

The Commissioner interprets the instruments relating to the disposition of the property as establishing a sale by the petitioner of 52.56 acres, of which the 19.67 acres were a part. The March 27, 1962, agreement between the petitioner and N.L.I. does call for the sale of 43 acres, more or less (determined later by survey to be 52.56 acres). However, this same instrument, which was the initiating agreement of the sale, provided for a purchase-money mortgage and specifically excepted from it the 8⅓ acres (later determined to be 19.67 acres) and provided for subsequent releases from the mortgage of other acreage contiguous to the 8⅓ (19.67) acres. Provision was also made for not disturbing growing crops of the land released from the mortgage except for the 8⅓ (19.67) acres to be excepted from the mortgage. After the survey which showed the increased acreage the parties appropriately modified the March 27, 1962, agreement and ratified all other pertinent terms of the agreement.

The settlement sheet at the time of closing the transaction was for the entire 52.56 acres, but it had no purpose except in setting forth the full consideration, indebtedness, charges, and credits to the end of showing the ultimate obligations and how they were met.

The indenture deed from the petitioner to N.L.I., covering the full 52.56 acres in its description of the property transferred, likewise had no purpose in incising out the separate properties. However, in the mortgage indenture where it was of utmost importance to identify the two properties, the 19.67 acres was specifically excepted and left unencumbered.

On these facts we conclude that there was a transfer and payment for two separate properties. There appears to be no question that if this is what took place, the petitioner was correct in reporting the sale of the 32.89 acres as an installment sale. We see in this transaction no sham or fragmenting the sale for tax purposes. The land was acquired for subdivision and development which would make it desirable and necessary for the 19.67 acres as the first land to be used to be unencumbered.[2] This is consonant with the provisions for successive payment and release of the additional acres as the development progressed. Such a view eliminates the need to consider whether another seller would be free to sell his tract of land in two separate lots at the same time and to the same buyer in circumstances different from what we have here. We might note in passing, however, that a seller with a buyer willing to pay all cash but persuaded by the seller to limit the cash to the comfortable and qualifying "28%," would probably have no difficulty qualifying under the installment sales provisions.

*Decision will be entered under Rule 50.*

---

[2] Cf. Rev. Rul. 57–434, 1957–2 C.B. 301–302, which states:

"where, under state law or regulations, a minimum down payment is required upon the sale of a particular class of property, and the down payment exceeds the maximum permitted by section 453(b) of the Internal Revenue Code of 1954, the sale thereof does not qualify for treatment under the installment method. However, the use of the installment method is not precluded in reporting the payments with respect to the remainder of the property included in the sale, provided the conditions of the statute on the use of such method are satisfied."

